MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
MICHAEL H. RAICHELSON (SBN 174607)
michael.raichelson@balboacapital.com
BRIAN DA COSTA (SBN 342660)
brian.dacosta@balboacapital.com
AMERIS BANK DBA BALBOA CAPITAL
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff,
AMERIS BANK D/B/A BALBOA CAPITAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL,<br><br>Plaintiff,<br><br>vs.<br><br>POWDER-X COATING SYSTEMS, LLC, a Tennessee limited liability company; and JOEY REX GOLLIVER, an individual,<br><br>Defendants. | Case No.: 8:23-cv-01394-KES<br><br>**PLAINTIFF AMERIS BANK DBA BALBOA CAPITAL'S FIRST AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF BUSINESS LOAN AGREEMENT**<br><br>**2. BREACH OF GUARANTY** |

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital, ("Balboa" or "Plaintiff"), alleges as follows:

## PARTIES AND JURISDICTION

1. Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital, with its principal place of business in the County of Fulton, State of Georgia, qualified to do business and doing business in the State of California, County of Orange.

2. Defendant Powder-X Coating Systems, LLC ("Powder-X") is, and at all times relevant to this action was, a Tennessee limited liability company, doing business in the County of Rutherford, State of Tennessee.

3. Defendant Joey Rex Golliver ("Golliver"), an individual, is and at all times relevant to this action was, a resident of the County of Rutherford, State of Tennessee.

4. Plaintiff is informed and believes and thereon alleges that each Defendant, directly or indirectly, or through agents or other persons, was engaged with some or all the other Defendants in a joint enterprise for profit and bore such other relationships to some or all the other Defendants to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about the foregoing, and that each Defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other Defendants.

5. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California *Civil Code* Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California *Civil Code* Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

6. Pursuant to the Business Loan Agreement and Guaranty described herein below, defendant Powder-X and defendant Golliver (collectively

"Defendants") agreed that the Business Loan Agreement would be governed by the laws of the State of California. In addition, the Business Loan Agreement provides, in pertinent part, as follows:

> **15. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Borrower and Lender submit to the jurisdiction of California and agree that any action or proceeding to enforce this Agreement or arising out of this Agreement will be exclusively commenced, initiated and litigated in the California State Courts located in Orange County and/or in the United States District Court for the Central District of California, Santa Ana Division.

7. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. §1332(a).

8. <u>Venue</u>. This case is properly venued in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. §84(c)(3).

## FIRST CLAIM

## (Breach of Business Loan Agreement )

## (Against Powder-X)

9. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

10. Prior to February 2023, Defendant Powder-X engaged with Innovative Capital Corp. ("Finance Broker"), with its principal place of business located at 283 Ascot Run Way Ft Mill, SC 29715, in order to obtain financing for its business.

11. Balboa is informed and believes, and therefore alleges, that the Finance Broker initiated and coordinated the submission of Defendants' electronic credit application to Balboa and other financial institutions. Upon review, the Finance Broker concluded that Balboa offered agreeable financing terms commensurate with Defendants' requirements. Thereafter, the Finance Broker

accumulated and submitted to Balboa the requisite signatories, documentation, and financial information from the Defendants to obtain financing for its business.

12. On or about March 17, 2023, Balboa executed and delivered to Defendant Powder-X, a written Business Loan Agreement No. F439021-000 ("BLA"). Pursuant to the terms of the BLA, Balboa loaned Defendant Powder-X the principal sum of two hundred thousand dollars and zero cents ($200,000.00). The BLA required Defendant Powder-X to make sixty six (66) weekly payments of $4,545.45 beginning on or about March 23, 2023. A true and correct copy of the BLA is attached as Exhibit 1 and is incorporated here by reference.

13. Paragraph 13 of the BLA defines an "Event of Default". Paragraph 13(a) provides that an "Event of Default" will constitute, without notice or demand, a default under this Agreement and all other agreements between Lender and (a) Lender is unable to collect any Automatic Payment Plan payment on three consecutive dates due and/or, Borrower fails to pay any Obligations on three consecutive dates due…"

14. The last payment received by Balboa was made on June 8, 2023. Therefore, on or about June 29, 2023, Defendant Powder-X breached the BLA by failing to make three weekly payments. Moreover, no further payments have been made since June 8, 2023. Defendant Powder-X's failure to make timely payments is a default under the terms of the BLA. Defendant Powder-X's failure to make timely payments constitutes as a default under the terms of the BLA.

15. Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit). The terms of the BLA incorporate by reference the terms of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) ("AA"). Pursuant to the terms of the AA, Defendant Powder-X's enrollment in Balboa's Automatic Payment Plan was required for loan approval. The terms of Balboa's Automatic Payment Plan included in the AA provide, in pertinent part, the following:

"AUTOMATIC PAYMENT PLAN: Enrollment in Lender's Automatic Payment Plan is required for loan approval and consideration. By signing below, Borrower agrees to enroll in this Automatic Payment Plan and authorizes Lender or its designee to collect payments required under the terms of Borrower's Business Loan Agreement by initiating automated clearing house ("ACH") Debit entries to the checking account indicated below . . . If Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment methods described in the Business Loan Agreement."

A true and correct copy of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) initialed by Powder-X's president, Joey Rex Golliver, is attached hereto as Exhibit "1" and incorporated by reference.

16. Pursuant to the AA, Defendant Powder-X agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under the terms of the BLA from a checking account designated by Defendant Powder-X. Defendant Powder-X provided the bank account information which made it possible for Balboa to electronically debit payments under the BLA.

17. Beginning on June 15, 2023, Balboa was unable to collect the agreed upon payments pursuant to the BLA and AA. Balboa's attempts to ACH debit payments from the checking account designated by Defendant Powder-X were returned as insufficient funds and/or stop payment.

18. Paragraph 13(a) of the BLA provides that, when Balboa was unable to collect more than three consecutive Automatic Payment Plan payment(s), Defendant Powder-X breached the terms of the BLA.

19. <u>The Promissory Note.</u> On February 23, 2023 and in connection with the BLA, Defendant Powder-X executed and delivered to Balboa a Promissory

Note ("Promissory Note"), "in connection with that certain Business Loan Agreement No. F439021-000." In addition, Defendant Golliver, personally guaranteed the terms of the Promissory Note. A true and correct copy of the Promissory Note is attached hereto as Exhibit "2" and incorporated herein by reference.

20. The Promissory Note confirmed, and Defendants acknowledged and promised to pay Balboa the Total Repayment Amount as shown on the first page of the BLA and to comply with the Payment Schedule included in the BLA. Moreover, the Promissory Note confirmed Defendants agreement to enroll in and initiate all payments or transfers to Balboa in accordance with the AA.

21. As set forth above, on or about June 29, 2023, Defendant Powder-X defaulted on the Promissory Note by: (1) failing to make three consecutive weekly payments, beginning June 15, 2023; and (2) by breaching the terms of the AA.

22. Pursuant to Paragraph 14C of the BLA, and as a proximate result of Defendant Powder-X's default thereunder, Balboa is entitled to declare the entire obligation due under the BLA immediately due and payable. As of the date of the filing of Balboa's Complaint, there became due the sum of $245,454.30, in unpaid obligations, exclusive of interest, attorney's fees and costs. No portion of which sum has been paid by Defendant Powder-X.

23. Balboa has performed all the terms, conditions, and covenants required to be performed by it under the terms of the BLA, except as excused or prevented by the conduct of Powder-X.

24. As a proximate result of Powder-X's breach of the BLA, Balboa has been damaged in the total sum of $245,454.30, plus interest at the rate of ten percent (10%) per annum from June 29, 2023 until the entry of judgment.

25. Further, under the terms of the BLA, Defendant, Powder-X, promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the

enforcement of the BLA. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs.

## SECOND CLAIM

### (Breach of Guaranty Against Defendant Golliver)

26. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

27. Concurrent with the execution of the BLA, and to induce Balboa to enter the BLA with Powder-X, Golliver guaranteed, in writing, the payment of the then existing and future indebtedness due and owing to Balboa under the terms of the BLA. A copy of the written Personal Guaranty (the "Guaranty") is attached as Exhibit 1 and incorporated herein by reference.

28. Following a default of Powder-X under the terms of the BLA, Balboa demanded Golliver make the payments required under the BLA. Golliver failed to meet the guaranty obligations and make the payments required under the BLA.

29. Pursuant to the terms of the Guaranty, the sum of $245,454.30, plus interest at the rate of ten percent (10%) per annum from June 29, 2023, is due and payable to Balboa from Golliver. This Complaint, in addition to previous demands, shall constitute further demand upon Golliver to pay the entire indebtedness due and owing from Powder-X to Balboa under the terms of the BLA.

30. Under the terms of the Guaranty, Golliver promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the BLA and the Guaranty. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ameris Bank d/b/a Balboa Capital prays for judgment against Defendants, and each of them, as follows:

1. The principal sum of $245,454.30;

    2.    Prejudgment interest at the rate of ten percent (10%) per annum from June 29, 2023 to the date of entry of judgment;

    3.    Other fees as specified in the BLA, in an amount to be proven at trial;

    4.    Reasonable attorneys' fees and costs;

    5.    Costs of suit as provided by law; and

    6.    Such other and further relief that the Court considers proper.

Dated:   August 17, 2023

AMERIS BANK DBA BALBOA CAPITAL

By /s/ Michael H. Raichelson
    Marisa D. Poulos
    Michael H. Raichelson
    Brian Da Costa
Attorneys for Plaintiff
AMERIS BANK DBA BALBOA CAPITAL